UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOREN WEBSTER,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. ED CV 08-01833-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

    Plaintiff raises the following issues:

    1.   Whether the Administrative Law Judge's ("ALJ") finding at

        step two that Plaintiff suffers no legally severe mental impairment is based on a proper evaluation of the opinions of the treating internist and of consultative and non-examining psychiatrists;

2. Whether the ALJ's finding that Plaintiff can perform a slightly reduced range of exertionally light work is based on a proper consideration of the fatigue flowing from his hepatitis C; and

3. Whether the rejection of the credibility of Plaintiff's fatigue is based on substantial evidence.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ'S DETERMINATION THAT PLAINTIFF**

**HAS NO SEVERE MENTAL IMPAIRMENT IS UNSUPPORTABLE**

In the ALJ's decision, following a hearing necessitated by a remand from the Appeal Council (AR 43-45), the ALJ found that Plaintiff does not have a severe mental impairment. (AR 24.) Plaintiff challenges that finding, and the Court agrees.

    **A.**    **Summary of Evidence Pertaining to Mental Health**.

Plaintiff's treating physician, Dr. Chen, is a doctor of osteopathy, who has seen Plaintiff since November 2005. (AR 352-422.) In his initial evaluation on November 1, 2005, Plaintiff complained of

depression, loss of usual interests, loss of concentration, and a recent onset of suicidal ideation. (AR 419.)  Dr. Chen prescribed the psychotropic medications Klonopin, Lexapro, and Seroquel. (AR 419-22.) Examination of the longitudinal record indicates that, due to side effects, Plaintiff's psychotropic medications were often adjusted by Dr. Chen.  For example, in December 2005, Plaintiff indicated he had stopped taking Lexapro due to dizziness, headaches, and irritability. (AR 412-13.)  Dr. Chen diagnosed Plaintiff with bipolar disorder and anxiety, and he continued prescriptions for Klonopin and Seroquel. (AR 412-13.)   Plaintiff refused Dr. Chen's referral for psychiatric treatment.   Dr. Chen refilled the Klonopin prescription, and began prescribing Depakote. (AR 392.)  The latter drug led to complaints of side effects, and it was discontinued. (AR 388.)  In August 2006, Plaintiff complained of anxiety, depression and regular mood swings. (AR 375.) Plaintiff tried to avoid taking the Depakote until he felt he really needed it. (Id.)  That drug was refilled, and Plaintiff also received a prescription for Lorazepam, which was refilled in late 2006, and early 2007.  Despite reporting that he felt better on Depakote (AR 372-73, 366-67, 365), Plaintiff reported feeling anxious, was again diagnosed with anxiety and bipolar disorder, and his medications were refilled in March 2007. (AR 353-54.)

In January 2007, Dr. Chen completed a Multiple Impairments Questionnaire, finding that due to his bipolar disorder, Plaintiff's physical symptoms are exacerbated, that he remains anxious and has sleep difficulties, despite the Depakote.  Dr. Chen further opined that Plaintiff's symptoms would likely increase if he were placed in a competitive work environment; that he is incapable of doing a full-time competitive job; that emotional factors contribute to the

severity of his symptoms and functional limitations; and that he is only capable of tolerating a low-stress work environment. (AR 346-47.) He would likely be absent from work more than three times a month and psychological limitations would affect his ability to work at a regular job on a sustained basis. (AR 348.)

On August 29, 2005, Plaintiff received a complete psychiatric evaluation ("CE") at the request of the Department of Social Security, from Dr. Roux (AR 302-312.)  Dr. Roux diagnosed major depressive disorder, recurrent, severe, without psychotic features, on Axis I, without ruling out bipolar II disorder. (AR 309.) As a prognosis, Dr. Roux reported the following:

> "It is possible that with adequate and appropriate treatment (which could feasibly include psychotropic medication adjustments, possibly augmented by counseling), [Plaintiff] could see at least some reduction in his various mood symptoms.  However, given the overall chronicity, severity, and multiplicity of his symptoms - further compounded by his physical pain and other stressors - his overall prognosis currently only appears to be fair. Therefore, it might be in his best interest to seek mental health consultation."

(AR 310-11.)

On September 9, 2005, Board-certified psychiatrist Dr. Hurwitz, a non-examining review psychiatrist, completed a mental residual functional capacity assessment, finding moderate limitations in Plaintiff's ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to make simple work-

4

related decisions; to interact appropriately with the general public; and to set realistic goals or make plans independently of others. (AR 316-17.)

In April, 2008, Plaintiff received a psychiatric CE from Dr. Parikh at the request of the Department of Social Services. (AR 440-446.) Dr. Parikh did not review any medical records, but after an examination, found that, on Axis I, Plaintiff has a mood disorder, not otherwise specified, and bipolar disorder by history. (AR 445.) Nevertheless, Dr. Parikh found that from a psychiatric standpoint, Plaintiff has no functional impairments. (AR 445-46.)

**B.    Summary of the ALJ's Decision.**

Although acknowledging that Plaintiff takes psychotropic medication prescribed by Dr. Chen, the ALJ determined there is no longitudinal history of mental health treatment despite the presence of County clinics in the area of Plaintiff's residence. (AR 24.)

The ALJ did note the psychiatric CE's of Dr. Roux, and Dr. Parikh. (AR 24.) In addition, the ALJ took note of State Agency review psychiatrist Dr. Hurwitz, but found that the conclusion that Plaintiff has moderate limitations in social functioning is not supported by the objective evidence. The ALJ ascertained that when employed, Plaintiff got along well with superiors, coworkers and customers, and that he now gets along with family members and neighbors and has close friends. (AR 24, citing AR 442.) With regard to this apparent assessment of Plaintiff's activities of daily living, and his interpersonal relationships, the Court notes that the ALJ relied upon Plaintiff's own self-reporting during his CE with Dr. Parikh. (AR 442.) Further, while noting that Plaintiff's girlfriend

asserted that he gets along "just fine" with authority figures, and that his girlfriend assessed a moderate limitation in maintaining concentration and persistence and pace, the ALJ determined that while "this may have been true at the time the State Agency and psychiatric consultative examiner rendered their opinions back in 2005 and 2006 ... this is certainly not the case now." (AR 24-25.) Thus, the ALJ relied upon the 2008 psychiatric CE of Dr. Parikh in discounting these lay observations.

The ALJ completely discounted the Multiple Impairments Questionnaire completed by Dr. Chen, Plaintiff's treating physician, who was characterized by the ALJ as having seen Plaintiff "occasionally" and treating him "most minimally." (AR 27.) The fact that Plaintiff only saw Dr. Chen every two months led the ALJ to conclude that Dr. Chen "must not have thought the [Plaintiff's] conditions were that serious since he did not need to see the [Plaintiff] for two months." Further, the ALJ determined that, "the asserted limitations are unsupported by the doctor's own record, by the minimal course of current treatment, and the form [Multiple Impairments Questionnaire] simply parrots the [Plaintiff's] assertions. The comments regarding the [Plaintiff's] mental condition are outside the competence of this osteopath and are certainly rebutted by the conclusions of the State Agency board-certified psychiatrist (exhibit references omitted)." (AR 27.)

**C.  Analysis**.

For numerous reasons to be discussed, the ALJ's conclusions as to Plaintiff's mental impairments are completely unsupportable. First, the credibility of Dr. Chen may not be depreciated because he is an

osteopath rather than a psychiatrist. A similar conclusion by an ALJ was rejected by the Ninth Circuit in Sprague v. Bowen 812 F.2d 1226, 1231 (9th Cir. 1987). There, the claimant's family doctor, Dr. Gehlen, provided an opinion as to claimant's mental state and its impact on her ability to work. The Ninth Circuit rejected the conclusion of the Magistrate Judge that it was appropriate, on the administrative level, to reject Dr. Gehlen's opinion as to the claimant's mental health because it was not offered by a board-certified psychiatrist. As the Opinion notes, there is no such requirement in the regulations, and, "under general principles of evidence law Dr. Gehlen is qualified to give a medical opinion as to [claimant's] mental state as it relates to her physical disability even though Dr. Gehlen is not a psychiatrist." (Id. at 1232, citations omitted.) Further, the Opinion observed that Dr. Gehlen was qualified in his state to practice and render psychiatric services, and further noted that primary care physicians identify and treat the majority of psychiatric disorders. (Id.) With regard to Dr. Gehlen's treatment of the claimant in that case, the Circuit found that by prescribing psychotherapeutic drugs, Dr. Gehlen was in fact practicing psychiatry. Thus, his evidence was considered "medically acceptable." (Id., citing 20 C.F.R. §404.1513(a)(1).) Similarly, in this case, Dr. Chen was Plaintiff's primary treating physician, and over a period of several years, prescribed psychotropic medications, adjusting them based on various negative side effects of some of the medications. Plainly, Dr. Chen's treatment did constitute psychiatric treatment, and thus, the ALJ's observation of a lack of a longitudinal history of mental health treatment is simply factually incorrect.

The ALJ appears to have accepted the mental health limitations

7

assessed by Dr. Roux in her 2005 psychiatric CE, and those of Dr. Hurwitz. (AR 24-25.) The ALJ cited implicit improvement in Plaintiff's psychiatric condition, as reflected in Dr. Parikh's CE, and therefore found no severe mental health impairment. Similarly, the ALJ discounted the statements of Plaintiff's girlfriend, who completed a third party questionnaire (AR 110-118; 129-136), finding that the 2008 psychiatric CE more adequately and correctly evaluated Plaintiff's mental state. In the Commissioner's portion of the JS, he echoes the ALJ's analytic framework, arguing that if, indeed, Plaintiff had a mental impairment, it had improved to such an extent that by the time he received his 2008 psychiatric CE from Dr. Parikh, it no longer existed. To support this, the Commissioner cites various parts of Plaintiff's treatment records from Dr. Chen. (See JS at 15, citing AR at 412-413, 419, 388-389, 377, 372.) The Court's examination of these records does not support the Commissioner's conclusion that they document a longitudinal improvement in Plaintiff's mental health condition. Moreover, the Court cannot fathom the Commissioner's contention that Dr. Chen's notes do not substantiate any mental functional limitations. This would only be true if the Multiple Impairment Questionnaire completed by Dr. Chen is ignored. The Court finds no stated specific and legitimate reasons set forth in the decision to, effectively, throw out Dr. Chen's, Dr. Roux's, and Dr. Hurwitz's findings. The Court does not agree that Plaintiff only saw Dr. Chen occasionally, or that Dr. Chen provided Plaintiff with minimal mental health care. The Court does not agree that Dr. Chen failed to set forth specific functional limitations in Plaintiff's mental functioning. The Court does not find any reasonable basis to reject Dr. Roux's conclusions based upon an

8

asserted consistent improvement in Plaintiff's mental functioning, which is not factually supported by the record. The Court does not find that Dr. Chen's findings simply parrot Plaintiff's own assertions, and, finally, with regard to Dr. Parikh's report, the Court is concerned that Dr. Parikh reviewed no medical or mental health records, and apparently relied, as did the ALJ, on Plaintiff's own assessment of his mental health functioning, such as his ability to get along with people, focus, follow instructions, and the like.

In sum, the ALJ's decision reflects not a recitation of specific and legitimate reasons to reject mental health assessments by qualified professionals, rendered over a period of several years, but rather, an apparent decision to accept the contradictory findings of a one-time examiner from a 2008 examination, and then read the record in a manner which would support rejection of other opinions. This form of analysis completely fails to comply with established law. Even the ALJ's apparent negative view of Plaintiff's failure or refusal to seek further mental health evaluation and treatment, as poorly reflecting upon the actual existence of a mental impairment, flies in the face of Ninth Circuit law which rejects reliance upon a mentally impaired person's refusal of treatment to find lack of an impairment. See Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1299-1300 (9th Cir. 1999). The Court perceives a lack of impartiality in this decision, necessitating, on remand, that the matter be assigned to another ALJ.[1]

---

[1] The Court is particularly perplexed by the Commissioner's argument that any error was harmless, because, in his hypothetical to the vocational expert ("VE"), the ALJ incorporated performance of jobs that required simple, routine, repetitive, non-public types of tasks.
(continued...)

**II**

**THE EFFECT OF FATIGUE BASED ON PLAINTIFF'S HEPATITIS C**

**CONDITION MUST RE REEVALUATED ON REMAND**

On July 10, 2008, Plaintiff received a Qualified Medical Evaluation, obtained at his own expense, from Dr. Steinberg. (AR 480-501.) Dr. Steinberg concluded that Plaintiff's primary symptom of fatigue is secondary to his condition of Hepatitis C. (AR 495.) Consequently, Dr. Steinberg found that these symptoms would "frequently" interfere with Plaintiff's ability to maintain attention and concentration, and as a result, he would likely miss work more than three times a month. (AR 499-500.) The ALJ rejected these fatigue-based limitations as "grossly exaggerated and either unsupported or actively rebutted by his own review of symptoms and actual physical examination." (AR 28.) Another ground for rejection was the asserted inconsistency with "other opinions," referring specifically to an internal medicine CE on March 31, 2008 by Dr. Lin. (AR 425-430.)

The Court will not devote substantial attention to the issue of Plaintiff's fatigue, either as medically reported by Dr. Steinberg, or Plaintiff himself, because these issues must be evaluated de novo on remand. The Court will observe, however, that the ALJ's depreciation of Dr. Steinberg's opinion because, for example, upper extremity limitations which he assessed were "incredible," does not comport with the record. Indeed, it appears that Dr. Steinberg only assessed

---

[1](...continued)
(AR 29-30.) If, as the ALJ determined, Plaintiff has no severe mental impairment, why, then, would he not only incorporate mental functional limitations in his hypothetical to the VE, but then rely upon that set of limitations in his decision?

minimal limitations with regard to the upper extremities, such as grasping, turning, and twisting objects, using fingers and hands for fine manipulations, and using his arms for reaching. (AR 497-498.) Moreover, it does not appear that Dr. Lin specifically addressed the issue of fatigue related to the Hepatitis C condition. Further, much of the ALJ's disagreement with Dr. Steinberg's findings pertains to issues that concern not Hepatitis C, but other conditions, such as liver dysfunction. Consequently, these issues must be examined on remand, in light of the existing evidence, and any additional evidence which is presented.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: August 11, 2009            /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE